UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

L T TUCKER,

        Plaintiff,                Case No. 2:22-cv-205

v.                                      Honorable Maarten Vermaat

R. KEMP et al.,

        Defendants.
_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).

Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002). That means payment should precede preliminary review pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c), which the Court is required to conduct prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). (ECF No. 1, PageID.24.) That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to enter an order denying Plaintiff leave to proceed *in forma pauperis* and directing him to pay the $402.00 filing fee. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from

the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Because Plaintiff is not permitted to proceed *in forma pauperis* in this matter, the Court will order Plaintiff to pay the $402.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[2] This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $402.00 filing fees in accordance with *In re Alea*, 286 F.3d at 380–81.

## Discussion

The PLRA amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $52.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan, filing dozens of lawsuits. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Tucker v. Hembree et al.*, 4:94-cv-105 (W.D. Mich. July 15, 1994); *Tucker v. Kinney et al.*, 4:94-cv-101 (W.D. Mich. June 30, 1994); *Tucker v. Chapin et al.*, 4:94-cv-100 (W.D. Mich. June 30, 1994); *Percival et al. v. Williams et al.*, 1:00-cv-849 (W.D. Mich. Nov. 29, 2000). Although three of the dismissals were

entered before enactment of the PLRA on April 26, 1996, the dismissals nevertheless count as strikes. *See Wilson*, 148 F.3d at 604.

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also Taylor* [*v. First Med. Mgmt.*], 508 F. App'x [488,] 492 [(6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf. Pointer* [*v. Wilkinson*], 502 F.3d [369,] 371 n.1 [(6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

In this action, Plaintiff sues the following Baraga Correctional Facility (AMF) officials: R. Kemp, R. Wertanen, Unknown Snow, K. Adams, Unknown Majurin, Unknown Carroll, Mark

5

Skytta, M. Redinger, Thomas Mohrman, D. Velmer, Unknown Frantti, and Unknown Williams. (Compl., ECF No. 1, PageID.2–3.)[3] Plaintiff alleges that after he filed civil action no. 2:19-cv-235 in this Court against Defendant Skytta, Defendant Skytta and "his co-worker friends" have taken various retaliatory actions against Plaintiff. (*Id.*, PageID.3.)

Specifically, Plaintiff alleges that on May 28, 2020, he was "at the prison law library to pick up some legal photocopies to be use[d]" in civil action no. 2:19-cv-235. (*Id.*, PageID.4.) Plaintiff states that he gave Defendant Kemp twelve pages "of grievance identifiers" for grievances filed by another inmate, inmate Bailey, which had been made publicly available in inmate Bailey's civil action against Defendant Skytta. (*Id.*) That same day, May 28, 2020, Defendant Kemp "issued a retaliatory false misconduct report . . . for the charge of contraband." (*Id.*) On May 29, 2020, Defendant Wertanen "reviewed [Plaintiff] on th[e] retaliatory false misconduct report." (*Id.*) Plaintiff claims that Defendant Wertanen twice threatened Plaintiff "with words that if [Plaintiff] didn't plead guilty and accept ten days of loss of privileges that [Plaintiff] would get found guilty anyway because [Plaintiff] file[s] too [many] civil action[s] against staff." (*Id.*, PageID.4–5.) Subsequently, on May 31, 2020, Defendant Snow conducted a class II and class III misconduct hearing for the May 28, 2020, misconduct report. (*Id.*, PageID.5.) Plaintiff claims that Defendant Snow "stated in a loud clear voice 'if you don't plead guilty, I'm going to find you guilty anyway for complaining so much.'" (*Id.*) Thereafter, Plaintiff was found guilty of the May 28, 2020, misconduct charge. (*Id.*)

---

[3] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's filings.

In April through June of 2020, Plaintiff attempted to obtain a unit porter job; however, Defendants Adams and Snow retaliated against him and, instead, hired another inmate for the position. (*Id.*, PageID.5–6.)

Subsequently, on June 15, 2020, Defendant Majurin tried "to force [Plaintiff] out of the law library" at "15:30 hours" when Plaintiff was permitted to remain at the library until "16:00 hours." (*Id.*, PageID.6–7.) At that time, Plaintiff claims that Defendant Majurin "was making all kinds of retaliatory animus statements" to Plaintiff. (*Id.*, PageID.7.) Thereafter, when Plaintiff arrived back at his housing unit, he told Defendant Williams about the incident with Defendant Majurin, and Defendant Williams "express[ed] his retaliatory motive," stating that "Defendant Majurin can kick [Plaintiff] out of the law library any time he want[s] to if he don't [sic] like the shit [Plaintiff was] filing in court on staff." (*Id.*, PageID.7–8.) Plaintiff claims that Defendant Skytta then told Defendant Williams that Plaintiff had filed a civil action against Skytta, and both officers implied that Plaintiff would be placed in administrative segregation at some point. (*Id.*, PageID.8.) Subsequently, Defendant Williams came to Plaintiff's cell and told Plaintiff that he would be moved to administrative segregation. (*Id.*)

Plaintiff claims that Defendant Mohrman "as a direct result of [Plaintiff] exercising [his] First Amendment rights," conducted "sham hearings" on June 24, 2020, and May 24, 2021. (*Id.*, PageID.9.) Plaintiff also claims that starting in December of 2020, and continuing until May 14, 2021, Defendant Velmer made "all kinds of retaliatory comments about [Plaintiff's] pending civil action [against Defendant Skytta]." (*Id.*, PageID.11.) Then, on May 14, 2021, Defendant Velmer "wrote [Plaintiff] a retaliatory animus motivated false misconduct report for threatening behavior." (*Id.*, PageID.12.) That same day, May 14, 2021, Defendant Frantti wrote Plaintiff "a retaliatory motivated false misconduct report for destruction or misuse of property." (*Id.*, PageID.13.) On

7

May 18, 2021, Defendant Wertanen "came to [Plaintiff's] cell and stated[:] 'If you don't plead guilty I'm going to find you guilty anyway . . . payback for all them [sic] grievance[s] you filed on staff.'" (*Id.*) Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation and violated the MDOC's policies. (*Id.*, PageID.20–22)

Then, in a separate section of Plaintiff's complaint titled, "Plaintiff Tucker['s] allegations of imminent danger of serious physical injury," Plaintiff alleges that he is in "imminent danger of serious physical injuries that are real, immediate, and proximate to happen at any time when Plaintiff comes out of his cell two time[s] a day for insulin shots, yard, shower, or any kind of call out from his cell" because "some of the Defendants have been making death threats" against Plaintiff. (*Id.*, PageID.19.) Plaintiff then sets forth several statements threatening bodily harm to Plaintiff, which he alleges certain Defendants made in July, August, September, and October of 2022. (*Id.*, PageID.19–20.) Subsequently, after filing this action, Plaintiff submitted an affidavit, in which he states that Defendant Majurin "made death threats to [Plaintiff] on December 19, 28, and 31, 2022." (ECF No. 7, PageID.64.) Plaintiff further states that on December 31, 2022, Defendant Majurin "made an attempt to physically attack [Plaintiff]" when Plaintiff was returning to his cell and Defendant Majurin was "standing less than ten feet from [Plaintiff's] cell." (*Id.*) Plaintiff states that Defendant Majurin "would have carr[ied] out his threat" if Plaintiff had not asked the unit booth officer to close his cell door. (*Id.*) Subsequently, after filing his affidavit, Plaintiff was transferred to the Oaks Correctional Facility (ECF No. 9) and then to the St. Louis Correctional Facility. (ECF No. 11.)

As set forth above, Plaintiff alleges that several Defendants made specific "death threats"—which Plaintiff sets out in the "imminent danger" section of his complaint—to him in July through

8

October of 2022, and that Defendant Majurin made such threats in December of 2022. The allegations regarding these "death threats" suggest that while incarcerated at AMF, Plaintiff was verbally harassed by some Defendants; however, they fail to support an inference that Plaintiff was in imminent danger within the meaning of § 1915. Plaintiff does not allege that any Defendants carried out their verbal threats or that he suffered any physical injury. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not typically rise to constitutional dimensions. *See Ivey v. Wilson,* 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (discussing that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

The Court does not condone the making of such threats by officers; however, despite the threats to have Plaintiff killed or harmed, Plaintiff does not allege that he has suffered any physical injury from Defendants.[4] The dearth of factual allegations to show any action by Defendants to carry out the threats, leads the Court to conclude that they "are described with insufficient facts and detail to establish that he is in danger of imminent physical injury . . . ." *Rittner*, 280 F. App'x at 798 (footnote omitted). Based on Plaintiff's allegations, they are not sufficiently "real and proximate." *Vandiver*, 727 F.3d at 585 (quoting *Rittner*, 280 F. App'x at 797). That is not to say

---

[4] Plaintiff also presented claims of specific death threats—but no actual physical injury—by officers at AMF in civil action no. 2:22-cv-35, which he also filed in this Court. *See* Compl. & Am. Compl., *Tucker v. Miller*, No. 2:22-cv-35 (W.D. Mich.), (ECF Nos. 1, 11). In that action, the Court determined that there was a sufficient nexus between Plaintiff's allegations of imminent danger and the allegations of the complaint, such that Plaintiff had alleged sufficient facts to show imminent danger within the meaning of § 1915. As explained below, such is not the case in the present action. Furthermore, the Court notes that the threats of harm, as set forth in civil action no. 2:22-cv-35, occurred in January and May of 2022, and despite alleging in the present action that officials at AMF continued to make threats in July through October of 2022 and in December of 2022, Plaintiff does not allege that anything actually happened at any point during this almost year-long period. That is, Plaintiff does not allege that Defendants carried out their threats.

9

that they are "ridiculous . . . baseless . . . fantastic or delusional . . . irrational or wholly incredible." *Id*. (quoting *Rittner*, 280 F. App'x at 798). They are simply insufficient.

Moreover, although Plaintiff alleges that several Defendants made specific "death threats" against him in 2022, the claims presented in the complaint stem from past events that occurred in 2020 and 2021. Plaintiff does not present any claims regarding, nor seek any relief for, the alleged "death threats" that Defendants made in 2022. Under these circumstances, there is no relationship between the imminent danger alleged and the facts alleged—and relief sought—in the underlying claims. Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see id.* at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (seminal case, holding that there be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint); *Andrews v. Cervantes*, 493 F.3d 1047, 1053–54 (9th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Meyers v. Comm'r of Soc. Sec. Admin.*, 801 F. App'x 90, 94–95 (4th Cir. 2020) (citing *Pettus*, and holding that "the better reading of the Imminent Danger Provision is that it requires a relationship between the imminent danger alleged in the IFP application and the facts alleged and relief sought in the underlying claim"); *Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (citing *Pettus*); *Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 71 (D.C. Cir. 2020) (holding that a nexus between the alleged imminent danger and the claims raised is required to avoid the conclusion that, at the same time it established the three-strikes rule, Congress intended to "engraft[] an open-ended exception that would eviscerate the rule" (quoting *Abdul-Akbar v.*

10

*McKelvie*, 239 F.3d 307, 315 (2d Cir. 2001))); *cf. Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison).

This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. *Pettus*, 554 F.3d at 297. That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), *quoted in Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

As applied to § 1915(g), the imminent-danger exception must be read in light of the strong general thrust of the PLRA, which was "aimed at the skyrocketing numbers of claims filed by

11

prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "[*i*]*n no event* shall a prisoner bring a civil action or appeal . . ." if the prisoner has three strikes, unless the prisoner's complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as she wishes on any subject—as long as she can state that she is in imminent danger from something, even if that something is unrelated to her claims and unrelated to the named defendants. *See Pettus*, 554 F.3d at 297; *Pinson*, 964 F.3d at 71. Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Because Plaintiff's allegations concerning the imminent danger he faced when he filed the complaint are wholly unconnected to the past events giving rise to Plaintiff's claims in this action, Plaintiff cannot demonstrate the requisite nexus. Permitting Plaintiff to proceed *in forma pauperis* based on wholly unrelated allegations of imminent danger would permit the exception to § 1915(g) to swallow the rule.

Therefore, for the reasons set forth above, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $402.00. When Plaintiff pays his filing fees, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).

If Plaintiff does not pay the filing fees within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $402.00 filing fees.

Dated:  February 22, 2023                                /s/ *Maarten Vermaat*
                                                            Maarten Vermaat
                                                            United States Magistrate Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court" and must indicate the case number in which the payment is made.**