UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

L T TUCKER,

                    Plaintiff,                          Case No. 2:22-cv-205

v.                                                      Honorable Maarten Vermaat

R. KEMP et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In an

opinion and order (ECF Nos. 14, 15) entered on February 22, 2023, the Court denied Plaintiff

leave to proceed *in forma pauperis* because he has three "strikes" for purposes of 28 U.S.C.

§ 1915(g) and failed to demonstrate that he was in imminent danger of serious physical injury.

Plaintiff paid the requisite $402.00 filing fee on March 8, 2023. Pursuant to 28 U.S.C. § 636(c)

and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters

in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.24.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§ 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to

the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th

Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the

complaint on the named defendants is of particular significance in defining a putative defendant's

relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Kemp, Adams, Mohrman, Carroll, Majurin, and Redinger for failure to state a claim. The Court will also dismiss Plaintiff's state law claims alleging violations of MDOC policy and for gross negligence against Defendants Kemp, Adams, Mohrman, Carroll, Majurin, and Redinger without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss the following claims against the remaining Defendants: (1) Plaintiff's retaliation claim against Defendant Snow premised upon his failure to give Plaintiff the unit porter job; (2) Plaintiff's retaliation claim against Defendant Williams premised upon Plaintiff's law library time being cut short; (3) Plaintiff's First Amendment access to the courts claims; and (4) Plaintiff's Fourteenth Amendment claims. The following claims remain in the case:

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

(1) Plaintiff's First Amendment retaliation claims against Defendants Williams and Skytta premised upon their threat to place Plaintiff in segregation, (2) Plaintiff's First Amendment retaliation claims against Defendants Wertanen, Snow, Williams, Velmer, and Frantti premised upon the issuance of false misconducts; and (3) Plaintiff's state law claims for violations of MDOC policy and for gross negligence against Defendants Skytta, Wertanen, Snow, Williams, Velmer, and Frantti.

**Discussion**

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues the following eleven AMF personnel in their individual capacities: Sergeant Unknown Williams; Corrections Officers Unknown Snow, Unknown Majurin, Unknown Carroll, and Unknown Frantti; R. Kemp; R. Wertanen; K. Adams; Mark Skytta; M. Redinger; and D. Velmer. Plaintiff also sues Hearing Officer Thomas Mohrman in his official capacity only. (ECF No. 1, PageID.2.)

Plaintiff alleges that after he filed civil action 2:19-cv-235 in this Court against Defendant Skytta, Defendant Skytta and "his co-worker friends" have taken various retaliatory actions against Plaintiff. (*Id.*, PageID.3.)[2]

Specifically, Plaintiff alleges that on May 28, 2020, he was "at the prison law library to pick up some legal photocopies to be use[d]" in civil action no. 2:19-cv-235. (*Id.*, PageID.4.) Plaintiff states that he gave Defendant Kemp twelve pages "of grievance identifiers" for grievances

---

[2] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's complaint.

filed by another inmate, inmate Bailey, which had been made publicly available in inmate Bailey's civil action against Defendant Skytta. (*Id.*) That same day, May 28, 2020, Defendant Kemp "issued a retaliatory false misconduct report . . . for the charge of contraband." (*Id.*) Plaintiff contends that Defendant Kemp failed to "describe the violation pursuant to [MDOC] policy" and, therefore, violated Plaintiff's "right to fair notice. (*Id.*)

On May 29, 2020, Defendant Wertanen "reviewed [Plaintiff] on th[e] retaliatory false misconduct report." (*Id.*) Plaintiff claims that Defendant Wertanen twice threatened Plaintiff "with words that if [Plaintiff] didn't plead guilty and accept ten days of loss of privileges that [Plaintiff] would get found guilty anyway because [Plaintiff] file[s] too [many] civil action[s] against staff." (*Id.*, PageID.4–5.) Subsequently, on May 31, 2020, Defendant Snow conducted a class II and class III misconduct hearing for the May 28, 2020, misconduct report. (*Id.*, PageID.5.) Plaintiff claims that Defendant Snow "stated in a loud clear voice 'if you don't plead guilty, I'm going to find you guilty anyway for complaining so much.'" (*Id.*) Plaintiff submitted a one-page written statement setting forth his defense. (*Id.*) Thereafter, Defendant Snow found Plaintiff guilty of the May 28, 2020, misconduct charge. (*Id.*)

On April 27, 2020, Defendant Adams sent Plaintiff "a memorandum and a program classification report to be classified for programming." (*Id.*) Plaintiff indicated that he preferred a law library job, but that his second preference would be to obtain a job as a unit porter. (*Id.*) Defendant Adams told Plaintiff on June 1, 2020, that Plaintiff "was number one on the list for a four unit porter job due to [Plaintiff's] certificate[es]." (*Id.*, PageID.5-6.) Defendant Snow, however, hired another inmate for the unit porter position. (*Id.*, PageID.6.) Plaintiff suggests that Defendants Adams and Snow did not hire him because of Plaintiff's grievances against staff, including Defendant Adams. (*Id.*)

Subsequently, on June 15, 2020, Defendant Majurin tried "to force [Plaintiff] out of the law library" at "15:30 hours" when Plaintiff was permitted to remain at the library until "16:00 hours." (*Id.*, PageID.6–7.) At that time, Plaintiff claims that Defendant Majurin "was making all kinds of retaliatory animus statements" to Plaintiff. (*Id.*, PageID.7.) Thereafter, when Plaintiff arrived back at his housing unit, he told Defendant Williams about the incident with Defendant Majurin, and Defendant Williams "express[ed] his retaliatory motive," stating that "Defendant Majurin can kick [Plaintiff] out of the law library any time he want[s] to if he don't [sic] like the shit [Plaintiff was] filing in court on staff." (*Id.*, PageID.7–8.) Plaintiff claims that Defendant Skytta then told Defendant Williams that Plaintiff had filed a civil action against Skytta, and both officers implied that Plaintiff would be placed in administrative segregation at some point. (*Id.*, PageID.8.)

Subsequently, Defendant Williams came to Plaintiff's cell and told Plaintiff that he would be moved to administrative segregation. (*Id.*) Plaintiff refused to go, stating that Defendant Williams was not "supposed to be around [Plaintiff] or try to escort [Plaintiff] to ad-segregation." (*Id.*) Defendant Williams called his supervisor, and John Doe (not a party) came to Plaintiff's cell. (*Id.*) Plaintiff explained the issue. (*Id.*) Defendant Williams, however, "wrote a retaliatory animus [motivated] false misconduct report" against Plaintiff. (*Id.*)

Plaintiff claims that Defendant Mohrman "as a direct result of [Plaintiff] exercising [his] First Amendment rights," conducted "sham hearings" on June 24, 2020, and May 24, 2021. (*Id.*, PageID.9.) Plaintiff also claims that starting in December of 2020, and continuing until May 14, 2021, Defendant Velmer made "all kinds of retaliatory comments about [Plaintiff's] pending civil action [against Defendant Skytta]." (*Id.*, PageID.11.) On May 11, 2021, Plaintiff told Defendant Velmer that he was going to file a grievance against him. (*Id.*) Defendant Velmer responded that

6

he "would send [Plaintiff's] ass to segregation." (*Id.*) On May 11, 2021, Plaintiff filed a Prison

Rape Elimination Act (PREA) complaint against Defendant Velmer. (*Id.*) He filed two grievances

against Defendant Velmer on May 14, 2021. (*Id.*) Also on May 14, 2021, Defendant Velmer "wrote

[Plaintiff] a retaliatory animus motivated false misconduct report for threatening behavior." (*Id.*,

PageID.12.) Plaintiff was found guilty of the misconduct and sanctioned to 30 days' loss of

privileges (LOP) by Defendant Mohrman. (*Id.*)

Plaintiff claims further that on May 14, 2021, he told Defendant Frantti that he was going

to file a grievance because Defendant Frantti refused to call healthcare even after Plaintiff indicated

that his blood sugar level was high. (*Id.*, PageID.13.) Two hours later, Defendant Frantti went into

Plaintiff's cell and "falsely claim[ed] he found an extension cord." (*Id.*) Defendant Frantti wrote

Plaintiff "a retaliatory motivated false misconduct report for destruction or misuse of property."

(*Id.*)

On May 18, 2021, Defendant Wertanen "came to [Plaintiff's] cell and stated[:] 'If you

don't plead guilty I'm going to find you guilty anyway . . . payback for all them [sic] grievance[s]

you filed on staff.'" (*Id.*) Defendant Wertanen told Plaintiff that he "better take these (10) days of

loss of privileges." (*Id.*, PageID.13–14.) Plaintiff claims that Defendant Wertanen refused to make

Plaintiff's one-page "statement of [his] retaliation defense" part of the hearing report. (*Id.*,

PageID.14.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First

Amendment right to be free from retaliation and violated the MDOC's policies. (*Id.*, PageID.20–

22.) He also asserts claims of "gross negligence." (*Id.*, PageID.3–14.) The Court also construes

Plaintiff's complaint to assert violations of his First Amendment right to access the courts, as well

as violations of his Fourteenth Amendment due process rights premised upon his allegations of

false misconducts and "sham" misconduct hearings, and a civil conspiracy claim.[3] Plaintiff seeks declaratory relief against all Defendants, and compensatory and punitive damages against all Defendants except Defendant Mohrman. (*Id.*, PageID.22.) With respect to Defendant Mohrman, Plaintiff seeks injunctive relief in the form of an order to implement a policy "to make a verbatim record by a[n] electronic device recording of all class I misconduct hearings throughout" the MDOC, as well as expungement of the misconducts from his record. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

---

[3] Plaintiff's complaint includes a separate section titled "Plaintiff Tucker['s] allegations of imminent danger of physical injury." In that section, Plaintiff contends that he is in "imminent danger of serious physical injuries that are real, immediate, and proximate to happen at any time when Plaintiff comes out of his cell two time[s] a day for insulin shots, yard, shower, or any kind of call out from his cell" because "some of the Defendants have been making death threats" against Plaintiff. (*Id.*, PageID.19.) Plaintiff then sets forth several statements threatening bodily harm to Plaintiff, which he alleges certain Defendants made in July, August, September, and October of 2022. (*Id.*, PageID.19–20.) Subsequently, after filing this action, Plaintiff submitted an affidavit, in which he states that Defendant Majurin "made death threats to [Plaintiff] on December 19, 28, and 31, 2022." (ECF No. 7, PageID.64.) Plaintiff further states that on December 31, 2022, Defendant Majurin "made an attempt to physically attack [Plaintiff]" when Plaintiff was returning to his cell and Defendant Majurin was "standing less than ten feet from [Plaintiff's] cell." (*Id.*) Plaintiff states that Defendant Majurin "would have carr[ied] out his threat" if Plaintiff had not asked the unit booth officer to close his cell door. (*Id.*)

Plaintiff included that section in his complaint because he has accrued three "strikes" for purposes of 28 U.S.C. § 1915(g) and, therefore, must show imminent danger of serious physical injury to be permitted to proceed *in forma pauperis*. In its opinion and order denying Plaintiff leave to proceed *in forma pauperis* in this case, the Court noted that "Plaintiff does not present any claims regarding, nor seek any relief for, the alleged 'death threats' that Defendants made in 2022." (ECF No. 14, PageID.89.) The Court, therefore, does not address any such claims in this opinion.

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims Against Defendant Mohrman

Plaintiff indicates that he is suing Defendant Mohrman in his official capacity only. (ECF No. 1, PageID.2.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v.*

*Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

As set forth above, Plaintiff seeks declaratory and injunctive relief against Defendant Mohrman. (ECF No. 1, PageID.22.) An official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have

been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff's complaint, however, is devoid of facts suggesting that Defendant Mohrman is engaged in ongoing violations of federal law. Instead, Plaintiff's allegations against Defendant Mohrman concern past actions that occurred in 2020 and 2021. Plaintiff, therefore, cannot maintain his official capacity claims for declaratory and injunctive relief against Defendant Mohrman, and Defendant Mohrman will be dismissed from this action.

**B.    Personal Capacity Claims Against the Remaining Defendants**

**1.    Claims for Declaratory Relief**

As noted *supra*, Plaintiff seeks declaratory relief against all Defendants. (ECF No. 1, PageID.22.) Plaintiff, however, is no longer confined at AMF, where he avers the remaining Defendants are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172,

175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained). Plaintiff is now incarcerated at SLF, and the remaining Defendants are not employed at that facility. Accordingly, the Court will dismiss Plaintiff's claims for declaratory relief against the remaining Defendants.

### 2.    First Amendment Claims

#### a.    Retaliation

Plaintiff contends that the remaining Defendants violated his First Amendment rights by retaliating against him in numerous ways. Specifically, Plaintiff alleges the following retaliatory actions: (1) the refusal to assign Plaintiff to a unit porter job; (2) cutting short Plaintiff's law library access; (3) threatening to place Plaintiff in administrative segregation; and (4) issuing numerous false misconducts to Plaintiff.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### (1)    Protected Conduct

Throughout his complaint, Plaintiff references that the remaining Defendants retaliated against him because of his civil action against Defendant Skytta. He also references filing

12

grievances against Defendants, filing a PREA complaint against Defendant Velmer, and threatening to file grievances. Filing a civil rights lawsuit constitutes protected conduct. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Moreover, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welbor*n, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Plaintiff, therefore, has adequately alleged that he engaged in protected conduct for purposes of his retaliation claims.

### (2) Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (emphasis in original). To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. The Court considers each of the alleged adverse actions below.

### i.       Unit Porter Position

First, Plaintiff suggests that Defendants Snow and Adams retaliated against him by not appointing him to the unit porter position. (ECF No. 1, PageID.5–6.) Plaintiff claims that Defendant Adams told him that he was "number one on the list for a four unit porter job." (*Id.*, PageID.5.) However, Defendant Snow picked another inmate for the position. (*Id.*) According to Plaintiff, Defendant Snow did so "out of retaliation of an incident of May 31, 2020, when [Plaintiff] told Defendant Snow that [he] was going to file a civil action on him for retaliating against [Plaintiff]" for his pending lawsuit against Defendant Skytta. (*Id.*, PageID.6.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Even assuming that failure to be chosen for a specific prison job constitutes adverse action, Plaintiff merely alleges the ultimate fact of retaliation. Plaintiff's complaint is devoid of facts suggesting that Defendant Adams was even aware of Plaintiff's pending lawsuit and grievances.

Moreover, the complaint fails to suggest that she was involved in the decision to pick the other inmate for the unit porter job. Although Plaintiff suggests that Defendant Snow picked the other inmate for the job about five days after Plaintiff threatened to file a grievance, the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *See Hill*, 630 F.3d at 476. This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff fails to allege facts that attribute any retaliatory motive toward Defendant Snow.

The Court, therefore, will dismiss Plaintiff's retaliation claims against Defendants Adams and Snow premised upon the selection of another inmate for the unit porter job.

### ii.      Shortened Law Library Time

Second, Plaintiff alleges that Defendant Majurin cut short his scheduled law library time by half an hour. (ECF No. 1, PageID.7.) According to Plaintiff, Defendant Majurin was making "all kinds of retaliatory animus statements including but not limited to (1) I don't care about you doing legal work all you doing anyway is filing shit on staff, (2) just get your shit and go. I know all about your civil action against Skytta[, that's] my friend we got to stick together against you jailhouse lawyers." (*Id.*) Plaintiff contends further that Defendant Williams agreed that Defendant Majurin could kick Plaintiff out of the law library whenever he wanted. (*Id.*, PageID.7–8.) The Sixth Circuit has concluded that being denied access to the law library on one occasion is de minimis conduct that does not constitute adverse action. *See Meeks v. Schofield*, 625 F. App'x 697, 701–02 (6th Cir. 2015). If being denied complete access on one occasion does not constitute

15

adverse action, then having one's scheduled time cut short on one occasion certainly does not rise to the level of adverse action. The Court, therefore, will dismiss Plaintiff's retaliation claim against Defendants Majurin and Williams premised upon Plaintiff's law library time being cut short.

### iii.    Threat of Placement in Segregation

Plaintiff also suggests that Defendants Williams and Skytta threatened to put Plaintiff in administrative segregation in retaliation for his protected conduct. (ECF No. 1, PageID.7–8.) Plaintiff alleges that after he complained about his law library access being cut short, Defendant Skytta told Defendant Williams that Plaintiff had a pending civil action against him. (*Id.*, PageID.8.) Defendant Williams responded that he knew, and said "we just put his ass in segregation." (*Id.*) Defendant Skytta responded, "[T]hat f***er, oh Tucker he [has a] civil action against me[;] let's do it put his ass in ad-seg." (*Id.*) Plaintiff refused to be escorted to segregation by Defendants Williams, Skytta, and Carroll. (*Id.*)

The Sixth Circuit has held that "the mere threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004). Here, Plaintiff alleges that Defendants Williams and Skytta threatened to place him in segregation on account of his pending civil action against Defendant Skytta. Although Plaintiff has not definitely proven retaliation, taking his allegations as true and in the light most favorable him, the Court cannot dismiss such retaliation claims upon initial review.

The Court will, however, dismiss Plaintiff's retaliation claim against Defendant Carroll. Plaintiff's sole allegation against Defendant Carroll is that he was one of the officers who arrived to escort Plaintiff to segregation. (ECF No. 1, PageID.8.) Plaintiff's complaint is simply devoid of facts from which the Court could infer any retaliatory motive on Defendant Carroll's part.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### iv. Receipt of Misconducts

Finally, Plaintiff contends that Defendants Kemp, Wertanen, Snow, Williams, Redinger, Velmer, and Frantti retaliated against him by issuing false misconducts because of Plaintiff's protected conduct. The Sixth Circuit has held that issuance of a misconduct charge can be considered adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Plaintiff, however, has not sufficiently alleged facts regarding retaliatory motive for each of the Defendants noted above.

Plaintiff first alleges that Defendant Kemp issued him a misconduct for possession of contraband. (ECF No. 1, PageID.4.) According to Plaintiff, the alleged contraband consisted of copies of grievances that another inmate, inmate Bailey, had filed in a lawsuit against Defendant Skytta. (*Id.*) Plaintiff requested copies to use as evidence in his pending case against Defendant Skytta. (*Id.*) The complaint, however, is devoid of any facts from which the Court could infer that Defendant Kemp acted with a retaliatory motive. Nothing in the complaint suggests that she was aware of Plaintiff's pending lawsuit against Defendant Skytta when she issued the misconduct. Merely "alleging . . . the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Kemp.

Plaintiff next alleges that Defendant Wertanen "reviewed" him on the misconduct issued by Defendant Kemp. (ECF No. 1, PageID.4.) Plaintiff argued that the documents were not contraband. (*Id.*) Defendant Wertanen responded that Plaintiff would be found guilty anyway

because he "filed [too many] civil action[s] against staff." (*Id.*) Defendant Wertanen also told Plaintiff that he would not allow him to possess the grievances because he knew that Plaintiff was trying to use them in his civil action "against [Defendant Wertanen's coworker and friend Skytta." (*Id.*, PageID.5.) Taking these allegations in the light most favorable to Plaintiff, the Court cannot dismiss Plaintiff's retaliation claim against Defendant Wertanen on initial review.

Defendant Snow conducted the misconduct hearing for the misconduct issued to Plaintiff by Defendant Kemp. (*Id.*) Defendant Snow told Plaintiff that if he did not plead guilty, he would find Plaintiff guilty anyway "for complaining so much." (*Id.*) Plaintiff gave Defendant Snow a written statement setting forth his "defense of retaliation." (*Id.*) Defendant Snow found Plaintiff guilty of the misconduct. (*Id.*) Again, taking Plaintiff's allegations in the light most favorable to him, the Court cannot dismiss Plaintiff's retaliation claim regarding the false misconduct against Defendant Snow on initial review.

Next, Plaintiff contends that Defendant Williams issued a retaliatory misconduct on June 15, 2020, after Plaintiff refused to cuff up and go to segregation. (ECF No. 1, PageID.8–9.) Plaintiff told Defendant Williams' supervisor that he had "complain[ed] to Defendant Williams" and threatened to file grievances against him. (*Id.*) Plaintiff also suggests that the misconduct was written right after Defendant Williams expressed that he was aware of Plaintiff's lawsuit against Defendant Skytta. (*Id.*) Given these allegations, the Court will allow Plaintiff's retaliation claim against Defendant Williams premised upon the issuance of an alleged false misconduct to proceed.

Plaintiff next alleges that Defendant Redinger issued a false misconduct on June 19, 2020, "to deter and punish Plaintiff Tucker for [prosecuting] this civil action and other protected conduct." (*Id.*, PageID.9.) This allegation is simply too conclusory to state a retaliation claim against Defendant Redinger. Plaintiff alleges the ultimate fact of retaliation; he alleges no facts

from which the Court could infer that Defendant Redinger issued the misconduct because of Plaintiff's protected conduct, much less that he was even aware of the protected conduct. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Redinger.

Finally, Plaintiff alleges that Defendants Velmer and Frantti each issued him a false misconduct on May 14, 2021. (*Id.*, PageID.14.) Plaintiff contends that prior to issuing the misconduct, Defendant Velmer made comments such as, "We [are] going to get you for filing that shit against Larson and Skytta" and told Plaintiff that he "better stop filing all [those] grievances against staff." (*Id.*, PageID.11.) Plaintiff eventually told Defendant Velmer that he would be filing a grievance, and Defendant Velmer responded that would "send [Plaintiff's] ass to segregation." (*Id.*) Plaintiff filed a PREA complaint and two grievances against Defendant Velmer on May 11 and 14, 2021. (*Id.*) On May 14, 2021, Defendant Velmer issued Plaintiff a misconduct report for threatening behavior. (*Id.*, PageID.12.) Likewise, Plaintiff alleges that Defendant Frantti issued a misconduct for destruction or misuse of property two hours after Plaintiff indicated that would be filing a grievance against Defendant Frantti for refusing to send Plaintiff to healthcare for high blood sugar. (*Id.*, PageID.13.) Plaintiff's complaint sufficiently alleges that Defendants Velmer and Frantti issued misconducts in response to Plaintiff's protected activity. Thus, Plaintiff's retaliation claims against Defendants Velmer and Frantti cannot be dismissed on initial review.

In sum, the Court will dismiss Plaintiff's retaliation claims against Defendants Adams, Majurin, Carroll, Kemp, and Redinger. The Court will also dismiss Plaintiff's retaliation claim against Defendant Snow premised upon his failure to give Plaintiff the unit porter job and his retaliation claim against Defendant Williams premised upon Plaintiff's law library time being cut short. Plaintiff's retaliation claims against Defendants Williams and Skytta premised upon their

threat to place Plaintiff in segregation, as well as his retaliation claims against Defendants Wertanen, Snow, Williams, Velmer, and Frantti premised upon the issuance of false misconducts, remain in the case.

> **b.      Access to the Courts**

The Court has construed Plaintiff's complaint to assert a First Amendment access to the courts claim. Plaintiff contends that on June 15, 2020, he was in the law library conducting research for three pending civil rights actions. (ECF No. 1, PageID.6.) According to Plaintiff, Defendant Majurin forced him to leave the library at 3:30 p.m., half an hour before Plaintiff's allotted law library time expired. (*Id.*) Plaintiff suggests that he was unable to "get law materials" because he was forced to leave the law library early. (*Id.*)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack

of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous

legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual

injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover,

the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord*

*Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury

to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . .

is an element that must be described in the complaint, just as much as allegations must describe

the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)

(citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to

give fair notice to a defendant." *Id.* at 415.

Plaintiff references three civil rights actions and, therefore has sufficiently set forth

underlying causes of action for which there can be actual injury. Plaintiff's complaint, however, is

wholly devoid of facts regarding how Defendant Majurin impeded his right to access the courts.

Plaintiff fails to allege that he suffered any lost remedy as a result of being forced to leave the law

library early on June 15, 2020. Plaintiff, therefore, has failed to state a claim for denial of access to the courts, and such claim will be dismissed.

### 3.  Fourteenth Amendment Claims

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon his allegations that he received false misconducts and participated in "sham" misconduct proceedings. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff is serving three concurrent life sentences for second-degree murder imposed by the Wayne County Circuit Court in 1977. *See* Register of Actions, *People v. Tucker*, No. 76-002230-01-FC, https://cmspublic.3rdcc.org/ (select "Criminal Case Records," complete the verification process, type "Tucker" for "Last Name" and "L.T." for "First Name") (last visited Mar. 13, 2023). In his complaint, Plaintiff references receiving Class I, II, and III misconducts. Under MDOC Policy Directive 03.03.105, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. *See* MDOC Policy Directive 03.03.105 ¶ B (eff. July 1, 2018). Minor misconducts are ones for which inmates cannot be denied good time or disciplinary credits. *See id.* ¶ AAAA. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter*

*v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Thus, Plaintiff cannot maintain due process claims based upon misconduct proceedings for Class II and III misconducts.

Furthermore, Plaintiff has not shown that his conviction for any Class I misconduct affected the length of his sentence—and he cannot. In Michigan, inmates who have been convicted of offenses committed prior to April 1, 1987, are eligible to earn good time credit. *See* MDOC Policy Directive 03.01.100 ¶ C (eff. Jan. 6, 2020). As noted above, Petitioner was sentenced to life in prison in 1977. Plaintiff, however, is precluded from earning good time credits due to his life sentence and the date of his offense. *See id.* ¶ H(1) (noting that inmates sentenced to life are ineligible to earn good time credits); *id.* ¶ H(2) & Attach. A (noting that inmates who have been convicted of certain offenses, including second-degree murder, may only earn good time credits on the maximum term of the sentence if the offense was committed on or after December 10, 1978, and prior to January 1, 1983). Thus, because Plaintiff is ineligible to earn good time credit, any Class I misconduct conviction cannot affect the length of his sentence such that a liberty interest is implicated.

Plaintiff avers that he was placed in administrative segregation for a total of 360 days, from May 14, 2021, until February 23, 2022, because of the alleged false misconducts. (ECF No. 1, PageID.10.) As an initial matter, Plaintiff's complaint is devoid of any facts from which the Court could infer that any of the named Defendants had any involvement in Plaintiff's continued placement in administrative segregation. In any event, confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine

whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g., Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

While Plaintiff may have been housed in administrative segregation during disciplinary proceedings, his complaint is devoid of allegations suggesting that he was sanctioned to segregation as a result of the misconducts. Rather, Plaintiff alleges that he received 10 days' LOP for each of three misconducts, and 30 days' LOP for the fourth. (ECF No. 1, PageID.14.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various

privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." *See* MDOC Policy Directive 03.03.105, Attach. E. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services). Moreover, while Plaintiff contends that he was "overlook[ed] for a [unit] porter job" because of the misconducts (ECF No. 1, PageID.10), Plaintiff has no liberty or property interest in prison employment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989) (discussing that there is no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job.").

Plaintiff also contends that the alleged false misconducts affected his security classification custody and management level. (ECF No. 1, PageID.14.) He avers that his security level was

increased to Level V from Level IV as a result. (*Id.*) Plaintiff, however, has no constitutional right to be incarcerated in a particular facility or to be held at a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody*, 429 U.S. at 88 n.9; *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter*, 69 F. App'x at 680 (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).

Finally, Plaintiff contends that the alleged false misconducts negatively affected his parole proceedings in January of 2022. (ECF No. 1, PageID.14.) According to Plaintiff, he was passed over by the Michigan Parole Board and will not be considered for parole again until January of 2027. (*Id.*) Plaintiff, however, has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan

system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, Plaintiff simply has no reasonable expectation of liberty, particularly because he has been sentenced to three life sentences for second-degree murder. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *See Greenholtz*, 442 U.S. at 11. Thus, even if the allegedly false misconducts somehow impacted Plaintiff's chances of parole in January of 2022, they do not implicate the protections of the Due Process Clause.

For the foregoing reasons, Plaintiff cannot maintain Fourteenth Amendment procedural due process claims regarding the allegedly false misconducts. Such claims will, therefore, be dismissed.[4]

---

[4] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640

4.      **Civil Conspiracy Claim**

The Court has construed Plaintiff's complaint to assert a civil conspiracy claim because he references "collusion" throughout his complaint.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible

---

F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff.

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, any intended substantive due process claims will be dismissed.

suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no allegations regarding any agreement among any of the named Defendants, other than the fact that they all are employed at AMF. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff's conspiracy claim under § 1983 will be dismissed.[5]

---

[5] Plaintiff's conspiracy claim also would be barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same). Here, Defendants are members of the same collective entity—the MDOC. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Johnson*, 40 F.3d at 840. Plaintiff's complaint is devoid of facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties.

### C.      Violations of MDOC Policy and State Law

Plaintiff alleges that Defendants' actions violated numerous MDOC policies. (ECF No. 1, PageID.21.) He also references that Defendants committed "gross negligence." (*Id.*, PageID.3–14.) Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). With respect to Plaintiff's claims concerning MDOC policy, the only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

Plaintiff may seek to invoke this Court's supplemental jurisdiction over his state law claims for violations of MDOC policy and gross negligence. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a

federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, Plaintiff continues to have pending federal claims against Defendants Skytta, Wertanen, Snow, Williams, Velmer, and Frantti. Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against those Defendants. The Court, however, has dismissed all of Plaintiff's federal claims against Defendants Kemp, Adams, Mohrman, Carroll, Majurin, and Redinger. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Kemp, Adams, Mohrman, Carroll, Majurin, and Redinger, and such claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Kemp, Adams, Mohrman, Carroll, Majurin, and Redinger will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state law claims alleging

violations of MDOC policy and for gross negligence against Defendants Kemp, Adams, Mohrman, Carroll, Majurin, and Redinger without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

Additionally, the Court will dismiss the following claims against the remaining Defendants: (1) Plaintiff's retaliation claim against Defendant Snow premised upon his failure to give Plaintiff the unit porter job; (2) Plaintiff's retaliation claim against Defendant Williams premised upon Plaintiff's law library time being cut short; (3) Plaintiff's First Amendment access to the courts claims; and (4) Plaintiff's Fourteenth Amendment claims. The following claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Williams and Skytta premised upon their threat to place Plaintiff in segregation, (2) Plaintiff's First Amendment retaliation claims against Defendants Wertanen, Snow, Williams, Velmer, and Frantti premised upon the issuance of false misconducts; and (3) Plaintiff's state law claims for violations of MDOC policy and for gross negligence against Defendants Skytta, Wertanen, Snow, Williams, Velmer, and Frantti.

An order consistent with this opinion will be entered.

Dated:    March 23, 2023                              /s/ *Maarten Vermaat*
                                                      Maarten Vermaat
                                                      United States Magistrate Judge