UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER,                                    Case No.   2:22-cv-00205

       Plaintiff,                          Hon.   Jane M. Beckering
                                                 U.S. District Judge

  v.

R. KEMP, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment (ECF No. 76) and Plaintiff's motion for summary judgment (ECF No. 80).

State Prisoner L. T. Tucker filed a verified complaint under 42 U.S.C. § 1983 alleging that the remaining Defendants retaliated against him in violation of his First Amendment rights.   The remaining six Defendants are Sergeant (Sgt.) Williams, Corrections Officer (CO) Skytta, CO Wertanen, CO Snow, CO Velmer and CO Frantti.

Tucker alleges that the remaining Defendants retaliated against him by giving him false misconduct tickets in violation of his First Amendment rights.   (ECF No. 16, PageD.97.)

The remaining retaliation claims are:

| Number | Claim | Defendant | Date |
|--------|-------|-----------|------|
| 1 | Tucker alleges that he was told to plead guilty to a misconduct ticket and accept ten days loss of privileges or he would be found guilty.   (ECF No. 1, PageID.4-5.) | Wertanen | 5/29/20 |
| 2 | Tucker was not allowed to keep grievances filed by another prisoner.   (*Id.*, PageID.5.) | Wertanen | 5/29/20 |
| 3 | Tucker was told to plead guilty to a misconduct ticket or he would be found guilty.   (*Id.*) | Snow | 5/31/20 |
| 4 | Threatened with placement in segregation for filing lawsuit against Skytta.   (*Id.*, PageID.7-8.) | Williams and Skytta | 6/15/20 |
| 5 | Issued an alleged retaliatory Class I misconduct.   (*Id.*, PageID.8.) | Williams | 6/15/20 |
| 6 | Issued an alleged retaliatory Class I misconduct.   (*Id.*, PageID.12.) | Velmer | 5/14/21 |
| 7 | Issued an alleged retaliatory Class II misconduct.   (*Id.*, PageID.13.) | Frantti | 5/14/21 |

Tucker argues that he is entitled to summary judgment because it is well known that he is a jailhouse lawyer who has been litigating for over 50 years. Tucker asserts that each Defendant knew this and had daily contact with him while he was housed at the Baraga Correctional Facility (AMF).   (ECF No. 81, PageID.804.)   Tucker alleges that each Defendant made retaliatory statements to

2

him.  (*Id*., PageID.805.)   Further, Tucker alleges that each Defendant was aware that he had a lawsuit against Skytta, and Skytta has "a habit of trying to get his Co-Defendant friends to take retaliatory actions." (*Id*., PageID.808.)   Tucker says that he filed over 500 grievances during his stays at AMF from July 2017 to July 2018, and from October 19, 2019 to January 9, 2023.  (*Id*., PageID.809.)   Tucker says that due to his grievances, Defendants issued false retaliatory misconduct tickets and subjected him to segregation and loss of privileges.  (*Id*., PageID.809-810.)   Tucker submitted affidavits from other prisoners who support his claims against Defendants and further assert that Defendants were aware of Tucker's litigation .  (ECF No. 81-2, PageID.823-833.)   For these reasons, Tucker argues that he is entitled to summary judgment.

Conversely, Defendants argue that they are entitled to summary judgment. Defendants Wertanen and Snow argue that they took no adverse action against Tucker by telling him to plead guilty to the misconduct tickets.  (ECF No. 77, PageID.701-702.)   Defendants Williams and Velmer argue that Tucker's claims against them are barred because he was found guilty of a non-bondable Class I misconduct ticket.  (*Id*., PageID.704-707.)   Defendant Skytta and Williams argue that Tucker's claim that they threatened him with segregation is meritless because after he was issued the non-bondable Class I misconduct for threatening behavior, MDOC policy required Tucker's transfer to administrative segregation until his hearing date.  (*Id*., PageID.707-709.)   Defendant Frantti argues that Tucker did not engage in protected conduct by allegedly threatening to file a grievance if Frantti

3

refused to call a nurse, and Frantti further argues that he would have issued Tucker a Class II misconduct for having an altered extension cord in his footlocker regardless of Tucker's threat to file a grievance or other grievances that he filed at AMF.   (*Id.*, PageID.710-714.)   Defendants argue that they are entitled to qualified immunity and that Plaintiff's state law claims should be dismissed.   (*Id.*, PageID.715-719.)

It is respectfully recommended that the Court deny Plaintiff's motion for summary judgment because Plaintiff has failed to show that there exists no genuine issue of material fact entitling him to relief.   It is further recommended that the Court grant Defendants' motion for summary judgment because no genuine issue of material fact exists entitling them to dismissal of the claims asserted against them.

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct.  *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

An adverse action is an action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396. Furthermore, "the threat of adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct."  *Hill v. Lapin*, 630 F.3d 468, 472 (6th Cir. 2010).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

### a. Wertanen and Snow (Claims 1, 3, and 4)

Tucker makes three separate retaliation claims that allegedly occurred after he was issued a misconduct ticket by the librarian for his possession of grievances filed by another prisoner.   (ECF No. 1, PageID.4.)

In **<u>claim 1</u>**, Tucker alleges that Wertanen reviewed a misconduct with him and told him "that if [I] didn't plead guilty and accept ten days loss of privileges that [I] would get found guilty anyway because [I] file to[o] much civil action against staff and that he got to make sure [I] get found guilty because R. Kemp was his lady." (ECF No. 1, PageID.4-5.)   Wertanen attests that he reviewed the class III misconduct ticket with Tucker on May 29, 2020.   (ECF No. 77-2, PageID.725 (Wertanen affidavit).)   Wertanen explains:

> 4.    On or about May 29, 2020, I did review a Class III
> misconduct report with Tucker according to MDOC policy.  I do not
> recall what the misconduct was specifically about.  However, during a
> misconduct review, prisoners are given the opportunity to waive a
> hearing on the misconduct and plead guilty.  It is routine practice for
> me to tell a prisoner, during the review, what sanction I would impose if
> the prisoner chose to plead guilty.  According to that routine practice, I
> did tell Tucker he could plead guilty, and I let him know what sanction
> I would impose if he did so.

(*Id*.)   Wertanen denies making any other statements alleged by Tucker.   (*Id*.)

In **claim 2**, Tucker alleges that Wertanen told him a second time to plead guilty and accept the ten days loss of privileges because he would not let him use grievances written by another prisoner against his co-worker.   (ECF No. 1, PageID.4-5.)   As to this claim, Wertanen stated:

> 6.    I do not recall Tucker possessing grievances filed by another
> prisoner.  However, prisoners are not permitted to possess grievances
> filed by other prisoners.  If Tucker had any such grievances, I would not
> have allowed him to keep them because it would be a violation of policy.

(*Id*. at 726.)

In **claim 3**, Tucker alleges that Snow retaliated against him by telling him to plead guilty during the Class III misconduct hearing or that he would find him guilty anyway for complaining.   (*Id*., PageID.5.)   Tucker alleged that he provided a

written statement explaining his retaliation defense but Snow found him guilty. (*Id.*)

Wertanen and Snow argue that Tucker cannot prove the adverse action element of his retaliation claim against them. A prisoner may waive a Class III hearing and plead guilty to "the reviewing officer at the time of review, or the facility hearing officer at the time of the hearing." MDOC Policy Directive 03.03.105ZZ (ECF No. 77-3, PageID.739.) Therefore, it logically follows that before a prisoner pleaded guilty to a misconduct ticket that a reviewing officer such as Wertanen and a hearing officer such as Snow, may inform the prisoner of the sanction they would impose on a prisoner who chooses to plead guilty before the hearing. There is nothing improper about providing this information. Moreover, even suggesting to a prisoner that he should plead guilty cannot be adverse conduct, because ultimately it is the prisoner's choice to plead guilty or to have a hearing on the misconduct. *See Tucker v. Miller*, 2:22-cv-35, at 19 (W.D. Mich. Dec. 19, 2023) (2:22-cv-35; ECF No. 88, PageID.803) (finding that even if Wertanen told Tucker to plead guilty during the misconduct hearing "such a statement is not adverse conduct or in any way a retaliatory action.")

In the opinion of the undersigned, Defendants Wertanen and Snow have established that no genuine issue of material fact exists entitling them to summary judgment.

**b.  Williams, Skytta, or Velmer (Claims 4-6)**

Tucker claims that he was issued two retaliatory Class I misconduct tickets and that he was threatened with placement in segregation.

In **<u>claim 4</u>**, Tucker alleges that on June 15, 2020, Williams and Skytta threatened to place him in segregation for filing a lawsuit against Skytta, and in **<u>claim 5</u>**, Tucker alleges that also on June 15, 2020, Williams issued a false retaliatory Class I misconduct for threatening behavior.   (ECF No. 1, PageID.7-8.)   In **<u>claim 6</u>**, Tucker alleges that in May of 2021, Velmer issued a false retaliatory Class I misconduct ticket for threatening behavior.   (*Id.*, PageID.12.)   Tucker was found guilty of both Class I misconduct tickets.

Defendants argue that because Tucker was found guilty of both Class I threatening behavior misconduct tickets, the findings of the hearing officers are entitled to preclusive effect.   The Sixth Circuit test for determining whether factual findings made within a Class I misconduct hearing are entitled to preclusive effect was established in *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)) (rejecting the checkmate doctrine but upholding the preclusive effect of major misconduct hearing findings when appropriate factors are met).   Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the hearing officer on behalf of the agency, was acting in a "judicial capacity," (2) the hearing officer resolved the disputed issue of fact that was properly before him or her, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the

findings of fact would be given preclusive effect by the Michigan courts.   *Maben*, 887 F.3d at 259, (*citing Peterson*, 714 F.3d at 911-13).   The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria as long as the other two criteria are satisfied. *Peterson*, at 912-14.

The record before the Court shows that on June 15, 2020, Sgt. Williams issued a Class I misconduct ticket to Plaintiff for threatening behavior.   (ECF No. 41-4, PageID.347.)   The hearing officer found Tucker guilty of the misconduct:

Hearing Investigation Read to and Discussed with Prisoner     ☑ (check if applies)     ☐ (unclear if applies)

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Prisoner's oral statement at hearing.  This is false.
The investigation was read and reviewed with prisoner which included: witness statements from:  C/O's Carroll, Skytta. The misconduct sanction screening form.  The prisoner's 2 pg. statement.  Sgt. Williams responded to relevant and necessary questions; others were not necessary.  The library video and the hand held at the cell after the incident are not relevant.
Video seen outside the prisoner's presence and held confidential as to show prisoner would allow him to know monitoring ability of fixed mounted cameras and compromise security.  This included video summaries provided by facility.
The prisoner was told findings and was issued a sanction.  The prisoner called this ALJ a 'fuck boy' and left the room.  The report was then typed outside the prisoner's presence.  The hearing was conducted via Tele-video conferencing with the ALJ in Marquette         **FINDINGS:**
Threatening Behavior (012) MDOC PD 03.03.105 Words, actions or other behavior which expresses an intent to injure or physically abuse another person.  I find the report logical and persuasive and supported by the two officers who were either

**REASONS FOR FINDINGS**

inside the room where the comment was made or right outside the door.  The prisoner was upset with officer Majurin.  He was complaining to the Sgt.  The prisoner told the Sgt. ". . . if I go back over to the school I am gonna have to do something about him and put my hands on him."  This was said letting the staff know that he was going to physically attack, injure and abuse officer Majurin.  The time of incident is correct per the unit video equipment.  It is not necessary to check clocks in the library.  Also the prisoner questioned the place were Officer Skytta was.  He was in the office behind the prisoner.  I do not find likely or logical that the three staff members conspired to say this prisoner threatened officer Majurin if he had not.  The fact they did not immediately detain him does not tell me he was not making the comment.  In fact the Sgt.'s choice to let the prisoner go back to the cell and cool down shows good policing skills.  He must have anticipated the prisoner would be upset if as the prisoner claimed he came with a hand held camera to take the prisoner to segregation.

**PROPERTY DISPOSITION (for contraband see PD 04.07.112)**

N/A

**FINDINGS**

| Charge No. 1 | ☑ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 012 |

(*Id.*, PageID.346.)   Tucker's request for rehearing was denied.   (*Id.*, PageID.359-362.)

10

Nearly a year later, on May 14, 2021, Velmer issued Tucker a misconduct ticket for threatening behavior.    (*Id.*, PageID.366.)    The hearing officer found Tucker guilty of the charge:

| EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT |
|---|
| Prisoner's oral statement at hearing: not guilty.  This was written in retaliation.  When asked what his grievance was about he said "all kinds of stuff."  He was asked about the conversation they had at the time and he said they did not have one.  He got the tray and walked away and said, "Oh you want to cut me!"  He just looked at me while in front of the cell.  He was not talking to me. |
| The investigation was read and reviewed with prisoner which included: The misconduct sanction screening form. Prisoners requested as witnesses all declined. (Prisoner said he knew that as they were scared to participate.)  The prisoners statement (2 pgs.) this was retaliation.  He provided 20 pgs. of court documents. |
| Video seen outside the prisoner's presence and held confidential as to show prisoner would allow him to know monitoring ability of fixed mounted cameras and compromise security.  This included video summaries provided by facility. |
| The prisoner had nothing to add. |
| The prisoner was told findings and was issued a sanction. The report was then typed outside the prisoner's presence.  This hearing conducted via Tele-video conferencing. |

| REASONS FOR FINDINGS |
|---|
| Threatening Behavior (012) MDOC PD 03.03.105 Words, actions or other behavior which expresses an intent to injure or physically abuse another person.  The prisoner lacks credibility.  His version of the events is not persuasive.  The officer was seen standing in front of his cell and was engaged in conversation with him.  He was talking contrary to the prisoner's claim. The officer's hands are moving and he is animated.  It is not likely he was staging all that to only make it look as though he was talking.  While the prisoner claimed this was retaliation there is nothing to support that claim.  He provided no insight into why the officer would do so.  While he claimed he had written a grievance on the officer there is no indication he had other than his claim.  Even if he had the officer might not have even known depending on when it was or what it was for as many grievances are rejected.  That said staff get grievances written on them and that does not mean that they would retaliated.  In this instance the prisoner was upset with the officer and told him to get away from the cell door.  He then went on to say "I am going to cut you, you bitch ass sucker.  Get away from my door!"  This is a comment which the officer would likely say to the officer who was standing talking to him.  This was a comment expressing his intent to attack, injure and physically abuse the officer. |

| PROPERTY DISPOSITION (for contraband see PD 04.07.112) |
|---|
| N/A |

| FINDINGS | | | | |
|---|---|---|---|---|
| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code  <u>012</u> |

(*Id.*, PageID.365.)

The factual findings made during these Class I misconduct hearings have preclusive effect because the record before the Court shows that all the requirements in *Peterson* have been met.    In each instance, the hearing officer acted in a judicial capacity and resolved disputed facts.    The record shows that Tucker had the opportunity to litigate the issue of whether he engaged in threatening behavior or whether the misconduct tickets were issued in retaliation for his litigation activities. In each instance, the hearing officer found that Plaintiff did engage in threatening

behavior and rejected Plaintiff's defenses including retaliation.   Tucker had the opportunity to seek review of the misconduct hearing findings and did so in the first instance.   In the opinion of the undersigned, Tucker is now precluded from asserting his retaliation claims in this lawsuit.

Nevertheless, this Court must determine whether a reasonable jury could find that Defendants issued the misconduct ticket due to Plaintiff's protected speech. *White v. McKay*, No. 22-192 (6th Cir., Nov. 17, 2023).   Williams attests that he wrote the Class I misconduct ticket because he heard Tucker threaten Officer Majurin while yelling and striking his fist on a table.   (ECF No. 77-6, PageID.771 (Williams's affidavit).)   Williams attests that under MDOC policy he is required to write a prisoner a Class I misconduct report when he witnesses threatening behavior.   (*Id.*) Skytta attests that he was in Sgt. Williams office and heard Tucker make the threat against officer Majurin. (ECF No. 77-5, PageID.766 (Skytta's affidavit).)

Similarly, Velmer issued the misconduct ticket after Tucker directly threatened her.   Velmer wrote:

Describe Violation  (If contraband involved, describe in detail; identify any other employee witnesses):
    While picking up breakfast trays on C-wing prisoner Tucker 132271 began to yell at me that I do not have the authority to tell him what to do, he then looked at me with direct eye contact and stated " I'm going to cut you, you bitch ass sucker, get away from my door" lded by door card and unit master count board.

(ECF No. 41-4, PageID.366.)   Thus, the undersigned concludes that Williams and Velmer have shown that they would have taken the same action – i.e., written the Class I misconduct ticket against Plaintiff – in the absence of the protected activity. *Thaddeus-X,* 175 F.3d at 399.   Plaintiff has offered nothing to overcome this conclusion.   Thus, it is the opinion of the undersigned that no reasonable jury could

conclude that Defendants issued threatening behavior misconducts due to Plaintiff's protected speech.

Further, Tucker alleged in his complaint that while he was leaving the "office from getting my legal mail" he was threatened with segregation.  (ECF No. 1, PageID.8.)   Williams explains that after a prisoner is given a non-bondable Class I misconduct ticket, the prisoner must be taken to administrative segregation until he receives a hearing.  (ECF No. 77-6, PageID.771-772.)   *See* MDOC Policy Directive 03.03.105(D) ("A Misconduct Report shall be written if the behavior constitutes a non-bondable Class I misconduct") (ECF No. 77-3, PageID.730.)   Tucker refused to go to segregation, so Williams notified Control Center and requested a supervisor to facilitate the move.   (*Id.*, PageID.772.)   In the opinion of the undersigned, Williams and Skytta have shown that no genuine issue of material fact exists on Plaintiff's retaliation claim that he was threatened with segregation because they were required to move him to segregation after Williams issued Plaintiff the non-bondable Class I threatening behavior misconduct.

### c.  Frantti (claim 7)

Tucker alleges that Frantti issued a retaliatory Class II misconduct ticket for misuse of property after Tucker says that he threatened Frantti with a grievance if his request for a nurse was denied.  (ECF No. 1, PageID.13.)   Frantti issued a misconduct ticket for Destruction/Misue of property.   (ECF No. 41-4, PageID.397.)   Frantti attests that after Tucker was taken to segregation on May 14, 2021, he was packing his property and found an extension cord that was altered inside a footlocker.

(ECF No. 79-1, PageID.798 (Fantti's affidavit.)    Frantti denies that Tucker told him that he was not feeling well and needed a nurse.    (*Id.*)    Further, if Tucker had asked for Frantti to call a nurse, he says that he would have called healthcare.    (*Id.*)    Frantti argues that Tucker cannot support his retaliation claim with factual evidence and that no genuine issue of material fact exists.

First, Frantti argues that Tucker failed to engage in protected conduct because any threat made by Tucker to file a grievance to get Frantti to call a nurse was manipulative and abusive.    Tucker's complaint alleges that he told Frantti to call a nurse for him or Tucker would file a grievance if he refused the request.    Tucker's threat to file a grievance occurred ***before*** Frantti could take any action.    Tucker then says that Frantti refused to call a nurse because he threatened to file a grievance and then, several hours later, issued the misconduct ticket in retaliation for the threat. Seven days later, Tucker filed the grievance after he was found guilty of the Class II misconduct ticket.

Here, Tucker, by his own admission, made a threat to file a grievance if Frantti refused to call a nurse.    Such conduct is clearly designed to manipulate an officer and set the officer up for future litigation if Tucker did not get exactly what he requested.

Protected conduct under the First Amendment includes a prisoner's right to file civil rights actions against prison officials.    *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).    Merely threatening to file a lawsuit is considered a protected activity as well.    *Dean v. Conley*, 1999 WL 1045166, at *2 (6th Cir. Nov. 9, 1999).

However, prisoners "cannot exercise [the right to file grievances] in a manner that violates legitimate prison regulations or penological objectives." *Smith*, 250 F.3d at 1037 (citing *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995)). "'Abusive or manipulative use of a grievance system [is] not . . . protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (alteration in original) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)). This includes the filing of frivolous grievances. *Hill*, 630 at 472.

This Court has found that a threat to file a lawsuit must be based on something that has already taken place to be considered protected conduct under the First Amendment. *Wells v. Rigotti*, No. 2:21-CV-199, 2023 WL 9540802 (W.D. Mich. Aug. 16, 2023), *report and recommendation adopted*, No. 2:21-CV-199, 2024 WL 177721, at *4 (W.D. Mich. Jan. 17, 2024). There, an inmate warned a prison official during a grievance review that he would file a grievance and lawsuit against the officer depending on the review's outcome. *Id.* at *3. Based on the inmate's conduct during the review, the prison official issued him a Class II Misconduct Report for insolence. *Id.* This Court stated that a prisoner does not engage in protected conduct simply by uttering the words "grievance" or "lawsuit." *Id.* at *4. Instead, the threat of a grievance or a lawsuit must be based on something that has already taken place. *Id.* Because no conduct had taken place to create a basis for the

15

inmate's potential suit, the Court found that the warning was frivolous and did not constitute protected conduct.  *Id.*

In the opinion of the undersigned, Tucker's threat to file a grievance if Frantti did not call a nurse was a manipulative and frivolous threat.   Assuming that Tucker made the threat, it was clearly manipulative and designed to get exactly what he wanted.   In such an instance, it is the opinion of the undersigned that Tucker's threat to file a grievance before any action could be taken on a request is frivolous and should not be considered protected conduct.

Frantti asserts that he would have issued the Class II misconduct ticket regardless of Tucker's threat to file a grievance.   Tucker was found guilty of having an altered extension cord and received ten days loss of privileges:



**HEARING REPORT (Do Not Complete If Hearing Waived)**
Evidence and/or prisoner statement in addition to misconduct report:  Prisoner Tucker plead not guilty, prisoner Tucker stated "staff are trying to set me up. They set me up on some fake threatening behavior and now this".

Reasons for findings:  Hearings finds the misconduct credible. Prisoner Tucker had an altered extension cord which was found in his footlocker during a property pack up. This is not the intended use of the extension cord and cannot be used for the intended use. The extension cord is destroyed. Charge sustained.

(ECF No. 41-4, PageID.396.)   A photograph of the extension cord found in Tucker's footlocker shows that it had been altered:



(*Id.*, PageID.398.)    In the opinion of the undersigned, no genuine issue of material

fact exists, entitling Frantti to summary judgment.

## V.  Qualified Immunity

Defendant argues that he is entitled to dismissal of the complaint against him

based upon qualified immunity.    "Under the doctrine of qualified immunity,

'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).    Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).    The analysis entails a two-step inquiry.    *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).    First, the court must "determine if the facts alleged make out a violation of a constitutional right."    *Id.*    (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).    Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."    *Id.* (citing *Pearson*, 555 U.S. at 232).    A court may address these steps in any order.    *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied.    *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.    *Graham v. Connor*, 490 U.S. 386, 394 (1989).    The court

considers the state of the law at the second step.   As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."   *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).   As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018).

In the opinion of the undersigned, for the reasons set forth above, Defendants are entitled to dismissal of Plaintiff's claims based upon qualified immunity from liability.

## VI.   State Law Claims

In his complaint, Tucker asserted that Defendants' conduct amounted to gross negligence and violations of MDOC policy under Michigan state law.   In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, when a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.   *Id.*   Dismissal, however, remains "purely discretionary."   *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

If the Court adopts the undersigned's recommendation, it will dismiss all of Tucker's federal law claims.   The balance of the relevant considerations would therefore weigh against the exercise of supplemental jurisdiction.   As such, the undersigned respectfully recommends that the Court decline to exercise supplemental jurisdiction over Tucker's state law claims.

## VII.   Recommendation

It is respectfully recommended that the Court deny Plaintiff's motion for summary judgment.   It is further recommended that the Court grant Defendants' motion for summary judgment because no genuine issue of material fact exists and dismiss this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     October 3, 2025                           /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U.S. MAGISTRATE JUDGE